UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11    **Hearing Date:** **July 17, 2017 at 11:00 am** |
| NATIONAL EVENTS OF AMERICA INC., | Case No. 17-11798 (JLG) |
| Debtor. | |

------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| NEW WORLD EVENTS GROUP INC., | Case No. 17-11799 (JLG) |
| Debtor. | |

------------------------------------------------------------x

**MOTION TO AUTHORIZE RECEIVER TO (I) REMAIN RESPONSIBLE OFFICER OF CORPORATE DEBTORS AS WIND-DOWN OFFICER PURSUANT TO 11 U.S.C. § 1107, OR IN THE ALTERNATIVE, (II) REMAIN IN POSSESSION, CUSTODY, AND CONTROL OF THE CORPORATE DEBTORS' PROPERTY PURSUANT TO 11 U.S.C. § 543**

Hutton Ventures LLC ("**Hutton**"), Taly USA Holdings Inc. ("**Taly**"), and SLL USA Holdings, LLC ("**SLL**," together with Taly and Hutton, the "**Moving Creditors**"), by and through their undersigned counsel, hereby move this Court (the "**Motion**") for entry of an order pursuant to sections 105(a), 543(d), and 1107 of title 11 of the United States Code (the "**Bankruptcy Code**"), Authorizing the Receiver (as hereinafter defined) to (I) Remain Responsible Officer of National Events of America, Inc. ("**NEA**") and New World Group, Inc. ("**NWG**" and, together with NEA, the "**Corporate Debtors**"), or in the Alternative, (II) Remain in Possession, Custody, and Control of the Corporate Debtors' Properties Pursuant to the Receiver Order (as hereinafter defined).

The facts and circumstances supporting this Motion are set forth in the Affidavit of Edward LoBello (the "**LoBello Affidavit**"), the state court-appointed receiver charged with operating and managing the Corporate Debtors' businesses and taking control of the Corporate

#7248124 v1 \023867 \0002

1

Debtors' property (the "**Receiver**" and, together with the Corporate Debtors and Moving Creditors, the "**Parties**"), offered in support hereof and attached hereto as **Exhibit A**. In support of this Motion, the Moving Creditors respectfully represent as follows:

## PRELIMINARY STATEMENT

1. The Corporate Debtors are part of a criminal organization that was run by, and for the benefit of, Jason Nissen ("**Nissen**"), who preyed on friends, funds, and his own employees. Nissen convinced his victims to "invest" in NEA and/or NWG through a series of investment contracts that were tied to the purchase of tickets for particular events. Apparently, Nissen failed to make purchases as required, and instead used new investments to cover losses on older investments, making NEA and/or NWG little more than a traditional Ponzi scheme. When the music stopped, NEA and/or NWG owed victims tens of millions of dollars in unreturned principal.

2. Upon discovery of the fraud, Taly filed a complaint against Nissen and moved for the appointment of the Receiver to divest Nissen of any governance of the Debtors and to plot a course for investigating and unraveling Nissen's scheme. On June 5, 2017, the New York Supreme Court (the "**New York Court**") appointed the Receiver. A few hours later, a series of LLC's[1] that were owned, in part, by NEA, filed for Chapter 11 bankruptcy protection (without first consulting the Receiver).

3. The Order appointing the Receiver (the "**Receiver Order**") granted the Recevier broad powers, including the power to file chapter 11 for the Corporate Debtors and the LLC Debtors. The New York Court, apparently recognizing that governance would remain an issue in

---

[1] Specifically, National Events Holdings, LLC, National Events Intermediate, LLC, National Event Company II, LLC, National Event Company III, LLC, and World Events Group II, LLC (together, the "**LLC Debtors**"). The Corporate Debtors and the LLC Debtors, together, are referred to as the "**Debtors**".

#7248124 v1 \023867 \0002

the early parts of this case, ordered that the Receiver would be appointed Responsible Officer of the Corporate Debtors, and therefore would, as a matter of state law governance, remain in control of the Corporate Debtors. As is set forth below, case law in this Circuit is clear that, under these circumstances, it is entirely appropriate for a non-bankruptcy law appointed receiver to remain as responsible officer and conduct the investigation and wind-down of the Debtors' assets and affairs.

4. There is no reason to deviate from this line of authority here. In reliance on the Receiver Order, the Receiver has already begun his investigation of the Corporate Debtors' affairs and relationships, and has been busy gathering and synthesizing information for more than a month now. If the Receiver were to be dispossessed now, the Corporate Debtors, and the victims of the fraud, would suffer additional delay and costs as more layers of professionals would be appointed to, in essence, start over. Importantly, the Receiver's continued role in these chapter 11 cases has been supported on the record in open court by various parties in interest in these cases, and in the cases involving the LLC Debtors. Moving Creditors respectfully submit that the Receiver should be retained as Wind-Down Officer ("**WDO**").

5. To the extent that the Court does not agree that those are sufficient reasons to leave the Receiver in place as WDO while the Corporate Debtors are in chapter 11, the Moving Parties respectfully submit that grounds exist to permit the Receiver to remain in possession of the Debtors' property as Receiver. Section 543 of the Bankruptcy Code permits a receiver to remain in possession of a debtor's property where it is in the best interests of the debtor's estate. Divesting the Receiver of control of these cases would set back the investigation - already underway - by more than a month. It is not in the best interests of the estate to layer

cost after cost ahead of victims of the Debtors' and Nissen's fraud. Moreover, it is important to underscore that in the context of the Debtors' bankruptcy cases, the largest economic stakeholders of the Corporate Debtors—Taly, SLL and Hutton together are owed nearly $27 million—support the continuation of the Receiver, *and* that FMP Agency Services, LLC, and Falcon Strategic Partners IV, LP – the largest creditors of the LLC Debtors' estates – likewise support the continued involvement of the Receiver as part of an agreed-upon protocol described to the Court on June 29, 2017, and as set forth more fully below. With that in mind, and being supported by substantially all of the major stakeholders in all of the Debtors' cases, it can hardly be said that retention of the Receiver in the manner set out herein is not in the best interests of these estates.

6. The Moving Creditors are victims of a massive fraud. While a conventional approach in a chapter 11 case of this type is to appoint a chapter 11 trustee or convert these cases to chapter 7, these cases cannot afford the delay and cost of new parties and professionals. Given that the Receiver is a neutral and a fiduciary, appointed by a state court, and whose continued role as WDO is supported by all the major economic stakeholders of the Corporate Debtors, the Moving Parties respectfully submit that cause exists for the relief sought herein.

## BACKGROUND

7. Prior to the June 5, 2017 petition date for the LLC Debtors, Taly, and SLL made a series of event-specific investments with NEA and/or NWG. Some of these investments were made through a combination of new money from Taly, and SLL plus the rolling forward of amounts owed to Taly or SLL under previous investments. As of the LLC Debtors' petition date, Taly and SLL were owed approximately $16 million on account of such investments. Each

#7248124 v1 \023867 \0002

of these investments was evidenced by a writing signed by Nissen on behalf of NEA and/or NWG. In addition, prior to the Petition Date, Hutton made a series of loan advances to NEA and Nissen, and were owed approximately $10 million on account of such loan advances. Hutton, Taly, and SLL believe that they hold substantial claims in these cases and in cases involving the LLC Debtors.

8. Prior to the LLC Debtors' petition date, the Debtors operated together as a ticket broker and wholesaler. The Debtors would acquire tickets to a variety of events with the goal of reselling these tickets at a premium. The Debtors relied on third-party buyers to acquire US Open tickets at face value and reimbursed these buyers for the cost of these tickets and, as part of some unwritten understanding, pay these buyers "additional compensation" which has been referred to as "Over Payments" or "Overs". A significant portion of the Debtors' remaining ticket assets are for the 2017 US Open tennis tournament.

9. On the LLC Debtors' petition date, the LLC Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Hours before those chapter 11 filings, upon motion made by Taly in prepetition litigation brought by Taly against the Debtors, Justice O. Peter Sherwood issued the Receiver Order appointing Edward LoBello, Esq. as Receiver of the Corporate Debtors and, in connection therewith, granted the Receiver broad rights and powers over not only the Corporate Debtors, but also the LLC Debtors. Included in the rights and powers afforded to the Receiver was the authority to file chapter 11 petitions for any or all of the Debtors. The Receiver Order also expressly appointed the Receiver as responsible officer for the Corporate Debtors. To date, there has been no appeal of or challenge to the order appointing the Receiver.

10. On June 28, 2017, the Receiver commenced these cases by filing voluntary chapter 11 petitions for the Corporate Debtors.

## RELIEF REQUESTED

11. By this Motion, the Parties seek entry of an order, pursuant to sections 105(a), 543, and 1107 of the Bankruptcy Code, authorizing the Receiver to: (i) remain in place and take on the title of Wind-Down Officer of the Corporate Debtors pursuant to established precedent or (ii), in the alternative, remain in possession, custody, and control of the Corporate Debtors' property under section 543(d) pursuant to the Receivership Order.

12. Additionally, the Parties are requesting that the WDO have authority to implement an agreement in principle regarding a proposed protocol (the "**Protocol**") and related matters for going forward in these cases and in the cases of the LLC Debtors as follows:

- These Chapter 11 cases would be kept separate and apart from the Chapter 11 cases of the LLC Debtors.

- The WDO would have no role with respect to the LLC Debtors.

- The LLC Debtors would remain as debtors in possession in their cases.

- Falcon would fund a $150,000 DIP loan to the LLC Debtors, and certain of the Moving Creditors would fund a $250,000 DIP loan to the Corporate Debtors. Such loans would be used by each group to perform an investigation of potential claims and causes of action that could be brought to generate proceeds for the benefit of creditors, as well as potential claims that each group may have against the other or against any of the other group's creditors.

- The Relief from Stay Motion would be granted to enable Falcon to receive the proceeds of the Collateral, net of the direct costs associated with liquidating the Collateral, and Falcon would be entitled to take over the liquidation of the Collateral under certain terms and conditions, including the Debtors' failure to comply with an agreed budget or adhere to certain agreed milestones. Falcon would hold any amounts received as proceeds of Collateral in a segregated manner until the end of an investigation

> period on September 20, 2017, and if no claims were brought by the end of that period, the respective parties would be released from any estate claims.

- The two groups would work in good faith to coordinate their investigations to the extent practicable and not in conflict and to minimize any duplication of efforts.

## BASIS FOR RELIEF

### A. The Receiver Should Be Authorized to Act as Wind–Down Officer of the Corporate Debtors

13. The Court has authority to permit the Receiver to continue in his role as responsible officer of the Debtors by appointing him as the WDO.

14. Section 1107(a) of the Bankruptcy Code provides, in pertinent part, that:

> Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations and conditions as the court prescribes, a debtor in possession shall have all the rights . . . and powers and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter.

11 U.S.C. § 1107(a).

15. The "plain meaning of section 1107(a) permits the Court to alter the powers of the Debtors' boards of directors . . . and impose requirements that will alleviate any concern, however unfounded, of a party in interest that [the CRO] will be some toady or crony of [the debtors' principal] instead of an independent professional with absolute control over the Debtors." *In re Blue Stone Real Estate, Construction & Development Corp.*, 92 B.R. 897, 903 (Bankr. M.D. Fla. 2008) (rejecting United States Trustee motion for a chapter 11 trustee and permitting CRO to control debtor).

16. Indeed, case law is replete with examples of bankruptcy courts exercising their authority to permit parties other than chapter 11 trustees to remain in control of a debtor in

possession. *See, e.g.*, *In re Gaslight Club, Inc.*, 82 F.2d 767 (7th Cir. 1986) (affirming a bankruptcy court decision permitting a responsible officer to be appointed in lieu of a chapter 11 trustee and explaining Bankruptcy Code sections 105 and 1107 "provide adequate authority for the bankruptcy court to approve the replacement of the person designated to perform the duties and exercise the rights of the debtor in possession if the creditors' committee, the person presently in control and the majority and controlling shareholder of the debtor agree to this course of action"); *In re National Century Financial Enterprises Inc.*, 292 B.R. 850 (Bankr. S.D. Ohio 2003) (ratifying debtor's pre-petition appointment of responsible officer).

17. As the Second Circuit has recognized, a receiver appointed under non-bankruptcy law can serve as both receiver and manager, and therefore there is no management vacancy that requires intervention by the United States Trustee. *See Adams v. Marwil (In re Bayou Group, LLC)*, 564 F.3d 541 (2d Cir. 2009) (rejecting argument by the United States Trustee that a receiver appointed to manage a business is divested on management authority simply by the filing of a chapter 11 proceeding). In *Bayou Group*, the United States Trustee argued that appointment of a trustee was necessary because the debtor was being ostensibly controlled by a non-bankruptcy law appointed receiver, and therefore there was a management vacancy that needed to be filled by the appointment of a fiduciary by the bankruptcy court. The Second Circuit disagreed, noting the "U.S. Trustee argues that, unless a trustee is appointed, Bayou lacks management to prosecute the bankruptcy proceedings. We are not persuaded." *Id.* at 547; *see also*, *SEC v. Byers*, 592 F.Supp.2d 532 (S.D.N.Y. 2008) (holding that upon bankruptcy filing, receiver would automatically succeed to role of debtor-in-possession).

18. Moreover, courts routinely permit a receiver to remain in control where, as here, the receiver actually commenced the chapter 11 cases. *See, e.g.*, *In re International Management Associates, LLC*, No. 06-62966 (Bankr. N.D. Ga., Mar. 16, 2006) (SEC receiver appointed trustee); *In re Rothstein Rosenfeldt Adler PA*, No. 09-34791 (Bankr. S.D. Fla. Nov. 10, 2009) (state court receiver handling a Ponzi scheme consented to an order for relief and was appointed to serve as Chapter 11 trustee).

19. Here, the Receiver was appointed pre-petition, and was granted expanded powers to, *inter alia*, manage the Corporate Debtors' assets and affairs. The Receiver Order expressly provides that the Receiver was appointed the responsible officer of the Corporate Debtors. There is, in the Moving Creditors' view, no reason to make any change in governance at this point.

20. Any such change would be deleterious to the Corporate Debtors' chapter 11 cases as a whole. For more than a month now, the Receiver and his professionals have been in the process of investigating the Debtors and attempting to unravel the fraud perpetrated on all creditors, including the Moving Creditors. As is set forth in the LoBello Affidavit, the Receiver has begun collecting books and records, retained counsel, retained an accountant, issued subpoenas, interviewed people with relevant knowledge and information regarding the Debtors' business and Nissen's involvement, and has commenced his review and analysis of the information available to him. The Receiver has appeared before the Court in the LLC Debtor cases and in doing so, has attempted to ensure that the rights of all stakeholders (including employees of the LLC Debtors) are protected, has been in contact with the Office of the United States Trustee, has had several meetings with counsel to the LLC Debtors and also with various creditor constituencies, and has been in contact with the United States Attorney and Nissen's

civil and criminal counsel. Divesting the Receiver at this time would set the cases back by more than a month, and would layer additional cost as a new set of professionals would need to learn everything that the Receiver and his professionals already have learned.[2] The Bankruptcy Code does not *require* the imposition of this cost and delay on these cases, and Moving Creditors respectfully submit that no orderly process would be served by making a change at this time.

21.    For the forgoing reasons, Moving Creditors respectfully submit that the Receiver should be permitted to remain as responsible officer of the Corporate Debtors, as Wind-Down Officer.

**B.    In the Alternative, the Receiver Should be Authorized to Remain in Possession and Control of the Corporate Debtors' Property, as WDO, Pursuant to 11 U.S.C. § 543(d)(1)**

22.    Under section 543(d)(l) of the Bankruptcy Code, the Court may excuse the Receiver from turnover upon notice and hearing if doing so is "in the best interests of creditors." 11 U.S.C. § 543(d)(l).[3]  Section 543(d) is comparable to general abstention under section 305 and is "intended to provide flexibility when there is no useful purpose to be served by turnover." *In re Plantation Inn Partners*, 142 B.R. 561, 564 (Bankr. S.D. Ga. 1992); *In re Lizeric Realty Corp.*, 188 B.R. 499, 506 (Bankr. S.D.N.Y. 1995).

23.    To determine whether to excuse turnover under section 543(d)(1), courts consider several factors, including: (1) whether there will be sufficient income to fund a successful reorganization; (2) whether the debtor will use the property for the benefit of the creditors; (3) whether there has been mismanagement by the debtor; and (4) whether there are preferences

---

[2] Delay in the Corporate Debtors' cases would likely create delay and additional costs in the LLC Debtor cases.
[3] Nothing contained herein is intended or should be construed as (a) an admission by Moving Creditors that the turnover provision under 543(b) requires that property be delivered to the Debtors here; or (b) a waiver of the Moving Creditors' rights to dispute any claim.

#7248124 v1 \023867 \0002

which a receiver is not empowered to avoid. *In re Lizeric Realty Corp.*, 188 B.R. at 506–07. On the basis of these factors, the Parties submit that the Receiver should be excused from complying with the turnover provisions of sections 543(a) and (b) and that the interests of creditors will be better served by authorizing the Receiver to remain in possession of the Property as WDO pursuant to section 543(d).

### 1. The Corporate Debtors Lack Sufficient Income From Which to Fund a Successful Reorganization

24.     In considering this factor, Moving Creditors believe that context is important, and that this prong of the test should be viewed alongside the pending motion seeking authority for the Receiver to enter into postpetition financing with Moving Creditors as lenders.

25.     The Corporate Debtors have no cash flow, and have no possibility of generating cash in the immediate term. There is no reasonable prospect that the Corporate Debtors will be able to fund a successful reorganization. It is doubtful that the Corporate Debtors' businesses will in the near term be able to generate sufficient revenues to meet current operating expenses.

26.     At the same time, however, the most likely path for these chapter 11 cases and for any likelihood of recoveries for creditors, is through the pursuit of avoidance and other actions. Moving Creditors are willing to fund an investigation undertaken by the Receiver, as Wind-Down Officer. A motion seeking approval of such financing is pending or will soon be filed. A funded investigation is, on the facts present, the functional equivalent of satisfying the "sufficient income from which to fund a plan" analysis.

### 2. Retaining the Receiver as Wind-Down Officer is in the Best Interests of Creditors

27.     There would be no benefit to creditors if the property of the Corporate Debtors' estates was turned over to a new, unfunded third party. In fact, turnover and the delay that

#7248124 v1 \023867 \0002

11

comes with it would likely be detrimental to the creditors' interests.[4] The LLC Debtors have consented and agreed to the Receiver's continued management of the Corporate Debtors' estates as Wind-Down Officer, as has the creditor who appears to have the largest claims against the LLC Debtors' estates (Falcon). Permitting the Receiver to continue in control of the Corporate Debtors as Wind-Down Officer will provide certainty to creditors and all parties in interest as to the ongoing investigation, and help bring much needed credibility and transparency to the process.

28. Based on the Corporate Debtors' financial condition, Moving Creditors have agreed to provide "DIP Financing" to the Receiver, and it is possible that the Moving Creditors will need to provide additional funding in the form of post-petition loans to continue the Receiver's efforts to complete an investigation. Moving Creditors are highly unlikely (and have not committed) to fund a new or restarted investigation if the Receiver does not remain in possession as Wind-Down Officer and, without such funding, Moving Creditors suspect that these cases will be effectively over and that any realistic prospects of recoveries will then have been lost. *See Foundry of Barrington Partnership*, 129 B.R. 550, 558 (Bankr. N.D. Ill. 1991) ("There is, therefore, no reason to believe that other creditors' interests will suffer by keeping the debtor out of possession of the property. Indeed, if it should be necessary to advance funds for operating expenses or tenant improvements, [the lender] is more likely to cooperate in that regard with the receiver in place.").

---

[4] With respect to the Corporate Debtors, other than the Receiver, there are no responsible individuals in a decision-making role.

#7248124 v1 \023867 \0002

### 3. The Corporate Debtors, Without the Receiver in Place as WDO, Are Unable to Exercise Management and Control

29. While courts rightfully consider a debtor's prior mismanagement in determining whether to excuse turnover, this factor is not significant here where the Corporate Debtors' pre-petition management has already been divested of any such control. The Receiver was in possession and management of the Corporate Debtors' assets in advance of the commencement of these cases, and indeed actually filed the Corporate Debtors' chapter 11 petitions. The Corporate Debtors' only other "management" is out on bail awaiting trial for his alleged criminal fraud, and if turnover was required under section 543(b), Nissen would have the ability to seek to assign management authority to another third party and may, in fact, be obliged to do so. *In re Uno Broadcasting Corp.*, 167 B.R. 189, 201 (Bankr. D. Ariz. 1994) ("Unlike the typical situation, in which a custodian would return assets to preexisting management, the custodian here would be required to turnover the assets to yet another third party.").

### 4. No Issues Related to Preferences

30. Moving Creditors are not currently aware of any "evidence that there are preferences which the [R]eceiver is powerless to avoid." *In re Lizeric Realty Corp.*, 188 B.R. at 507. Even if the Parties later identify any preference or avoidance issues, the Receiver's possession of the Property has no affect the Corporate Debtor's ability to pursue an avoidance action. Regardless of whether the Receiver is excused from turnover under section 543(b), the Corporate Debtors will have the same authority to challenge any fraudulent conveyences or preferential transfers.

31. Finally, Courts have frequently excused turnover under section 543(d) where a receiver has been appointed by a state court and where the receiver will better serve the interests

of creditors. *See Vanderveer Estates Holding, LLC*, 293 B.R. 560, 561 (Bankr. E.D.N.Y. 2003); *see also In re Olympia & York Maiden Lane Co., LLC*, 233 B.R. 662, 666–67 (Bankr. S.D.N.Y. 1999); *In re Ofty Corp.*, 44 B.R. 479, 481 (Bankr. D. Del. 1984).

32.   For each of the foregoing reasons, the Parties respectfully submit that the relief sought herein is appropriate and warranted pursuant to section 543(d) of the Bankruptcy Code, and is necessary to prevent further delay and expense, for no benefit.  Pending resolution of this motion, Moving Creditors submit that the Receiver should be excused from compliance with section 543(b).  *In re Watkins*, 63 B.R. 46, 48 (Bankr. D. Colo. 1986) (holding that a custodian need not deliver the property to the debtor pending a court's decision under section 543(d)).

33.   Moreover, the Court should expressly provide that the WDO has authority to implement the Protocol. These cases are unique in that two separate parts of the same criminal enterprise were filed into two separate bankruptcy cases with separate fiduciaries.  In this unique instance, however, this separation makes sense.  It is unclear now whether and to what extent each estate is related to the other.  Indeed, it may ultimately be that the Corporate Debtors have claims against the LLC Debtors, or the reverse may be true. While that investigation is ongoing, however, there must be some sense of order that permits the estates to function together in a manner that respects the separation of each estate, but also preserves the status quo and promotes efficient use of the limited resources in these cases.

34.   By ensuring that while each estate is separately operated, nothing done in the LLC Debtor cases can impair the rights of creditors of the Corporate Debtors, and vice versa, the Protocol serves to establish clear checks and balances that will inure to the benefit of all

#7248124 v1 \023867 \0002

stakeholders in these cases. As such, the WDO should have authority to take steps to implement the Protocol.

## NOTICE

35. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the Receiver; (iii) counsel for the Receiver; (iv) counsel for the LLC Debtors; (v) counsel to Falcon; and (vi) all parties having requested notice in the Corporate Debtors' chapter 11 cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested herein, the Moving Creditors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

36. The Moving Creditors have not previously sought the relief requested herein from this or any other Court, and are unaware of any other parties who have done so in any forum.

WHEREFORE, the Moving Creditors respectfully request that the Court enter an order, in substantially the form attached hereto, (i) authorizing the Receiver to remain in possession, custody, and control of the Corporate Debtors' property under 11 U.S.C. § 543(d); (ii) excusing the Receiver from any turnover requirement under 11 U.S.C. § 543(b); (iii) authorizing the Receiver to continue his investigation and wind-down of the Corporate Debtors, as Wind-Down Officer, in the ordinary course consistent with 11 U.S.C. § 543(c); (iv) authorizing the WDO to take steps to implement the Protocol; and (v) granting such other and further relief as the Court deems necessary and appropriate.

#7248124 v1 \023867 \0002

Dated: July 11, 2017
New York, New York

**ALSTON & BIRD LLP**

/s/ Gerard S. Catalanello
Gerard S. Catalanello
James J. Vincequerra
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel for Hutton Ventures LLC*

-and-

**MORRISON COHEN LLP**

/s/ Joseph T. Moldovan
Joseph T. Moldovan
Robert K. Dakis
909 Third Avenue
New York, NY 10022
Telephone: (212) 735-8603
Facsimile: (917) 522-3103

*Counsel for Taly USA Holdings, Inc.
and SLL USA Holdings LLC*

#7248124 v1 \023867 \0002